### CLARK v. CASLER, Administrator, &c.

Assumpsit against a guardian. The declaration alleged that the defend-
ant was indebted to plaintiff for boarding the wards, at defendant's re-
quest. Pleas, 1st. General issue; 2d. No assets in his hands belonging
to his wards; 3d. That he was not guardian when the accommodations
sued for were furnished. Demurrer to the second and third pleas sus-
tained; and judgment against defendant for 25 dollars, to be levied of
the effects of the wards in his hands as guardian. Held, that the de-
murrer was rightly sustained, as the defendant was sued on his indivi-
dual undertaking. Held, also, that the judgment should have been
against the defendant personally.

ERROR to the Hamilton Circuit Court.  *Friday, December 8.*

PERKINS, J.—Assumpsit. The declaration was by
"James Casler against Raymond W. Clark, guardian of
James Hare, Sarah Ann Hare, and Isabel Hare, minor
children of Thomas Hare, deceased." It set forth that
"the defendant, guardian as aforesaid," was indebted to
the plaintiff in divers sums for the board and lodging,
&c., of said minor children, furnished before that time,
"at the special instance and request of said defendant,"
and that, being so indebted, he undertook and promised
to pay, &c.

The defendant pleaded three pleas. 1. The general
issue; 2. No assets in his hands belonging to his wards;
3. That he was not guardian when the accommodations
sued for were furnished.

A demurrer to the second and third pleas was sustain-
ed; the cause was submitted to the Court without a jury,
and the following judgment rendered:

"Whereupon the Court, after hearing the evidence, do

find that the plaintiff has sustained damages, by reason of the premises, amounting to 25 dollars. It is therefore considered by the Court, that the plaintiff recover of the defendant the sum of 25 dollars as above assessed, and also the sum of —— dollars, his costs and charges herein expended, to be levied of the goods, chattels, and effects, of *Sarah Ann* and *Isabel Hare* in his hands, as guardian, as aforesaid."

The Court did right in sustaining the demurrer to the second and third pleas of the defendant. He was sued upon his individual undertaking, though described as guardian, and, hence, it was immaterial whether he had property in his hands belonging to his wards or not, or whether he was guardian at the time the accommodations were furnished or not. The declaration being proved, the judgment, in any event, would be against the defendant personally. And for the same reason that the demurrer was rightly sustained, the final judgment was wrongly entered. It should have been simply a personal judgment against the defendant, that is, provided the evidence, which is upon record, justifies any judgment against him. The evidence we understand to be this. *Casler*, the plaintiff, in 1841, married the mother of the children mentioned in the declaration, and, immediately afterwards, took to his own home, with his wife, the two daughters, *Sarah Ann*, then about ten, and *Isabel*, then about eight years of age, and retained them till near the time this suit was commenced, as members of his family—they working for and being supported by him as such. There is no proof that *Clark*, the defendant, was their guardian, nor that he requested the plaintiff to board the children, nor that there was any understanding that their board was to be paid for.

It would seem very doubtful whether, under such circumstances, the law would imply an obligation on their part, or that of their guardian, to pay for board, though it is not necessary that we should, and we do not, now decide the point, as additional evidence may be given upon another trial of this cause. In *Resor* v. *Johnson*,

*May* term, 1848, (1) this Court held that where a son remained, after arriving at the age of majority, at his father's house, rendering services and being supported in the same manner as while a minor, the law implied no obligation on the part of the father to pay for such services. In *Fitch* v. *Peckham*, 16 Vermont, 150, the same doctrine was applied in a case where a widow, upon the death of her husband, returned to, and lived at, her father's house as before her marriage. In *Andrews* v. *Foster*, 17 id. 556, the rule was said to extend to a case where the daughter of another was taken and raised till of age, and she continued to reside in the family of her foster-father afterwards. And in *Weir* v. *Weir's administrator*, 3 B. Mon. 645, it was held that, where three young men, nephews, lived with their uncle, working for and being supported by him as members of his family, they could not recover wages upon an implied contract. These cases all proceeded on the ground that the facts stated in them raised no implication that an understanding existed between the persons concerned, that compensation was to be given or received for the services alleged as the cause of action; and, hence, that in a suit for such compensation it devolved upon the plaintiff to prove, by evidence additional to those facts, that such an understanding did exist. Now, it would seem clear that if no implication arose from those facts, on the one hand, of an understanding that compensation was to be made for services rendered, neither would one, on the other, that compensation was to be made for support furnished. If we are right in this, the authorities above cited, would seem to leave scarcely a doubt as to what should be the decision in this case upon the evidence as it appears of record.

We may remark that we do not mean to admit, by implication, that a guardian could, in any event, be sued upon the undertaking of his ward. We decide nothing as to that. See, however, on this point *Cassady* v. *Cassady*, 1 Barbour's Ch. R. 467.—*Simms* v. *Norris*, 5 Ala. 42.—*Thatcher* v. *Dinsmore*, 5 Mass. 302 (2).—Hilliard's

Nov. Term,
1848.

Jurisprudence, 31:—*Call* v. *Ward*, from 4 Watts & Seargent, in 1 Vol. Am. L. Mag. 437.

*Per Curiam.*—The judgment is reversed. Cause remanded, &c.

*L. Barbour*, for the plaintiff.

*A. A. Hammond* and *J. H. Bradley*, for the defendant.

(1) See *ante*, p. 100.

(2) An infant is not personally liable, even for necessaries, when they are supplied to her by a store-keeper with the permission of her guardian, and charged to him, although the credit given to the guardian may have been induced by the fact that the ward had an estate of her own, and with the expectation that the debt would be paid out of it. The contract is personal to the guardian and his liability cannot be shifted to an infant.— *Simms* v. *Norris et al.*, 5 Ala. 42.

An execution issued by a magistrate, under a judgment against the guardian, against the property of his ward, is void.

A judgment against a party, as a guardian, is no more than a judgment against him without the addition, that being only a *descripto personæ*.

No judgment against a party, as guardian, can have the effect to change either the person or estate of his ward. The ward could be made amenable to a magistrate's power and judgment only by summons; and then could only be charged after appearance and defence by guardian.

The guardian is responsible to every one contracting with him, and not the estate of his ward; against and with it he is to account, and debts paid for its benefit he is entitled to submit as charges against the ward.—*Tobin* v. *Addison et al.*, 2 Strobhart's S. C. R. 3.